Good morning. With the First Step Act, Congress created a system whereby prisoners who take part in recidivism reduction programming earn time off their sentence and additional time in the community. The parties in that dispute that Mr. Osorio-Calderon did what was asked of him under the system, yet he has remained stuck in FCI Sandstone for the past two years. With the BOP conceding that habeas jurisdiction exists here, one issue remains, whether he is entitled to a transfer. The answer is yes. The First Step Act says shall, and shall means shall. The BOP argues otherwise. Let me just ask, so I get the shall, but what do we do with the review bar that says that's an issue for the Bureau of Prisons, not for us, that's not reviewable by any court, not withstanding any other provision of law? Yes, Your Honor. The reason that Mr. Osorio-Calderon's reading is the better reading is because it gives effect to every part of the statute. The government's reading lets that subsection swallow the whole in all the statutes. And here's what I mean by that. If you read the bar in 3621B, it specifically says it limits review of decisions made under that subsection, specifically that subsection. If you look at 3632D4C, the First Step Act, that's where it says the BOP shall transfer someone, and they should do so as determined under 3624G. So if you look at 3624G, the requirements are far different than those in 3621B. You know, that issue here really is that the important one is when the number of credits you earn is the remainder per sentence. That's when you should be moved. So the decision to move someone is made under that subsection, 3624G. The BOP retains the discretion to decide where to send you. So in this case, for instance, Mr. Osorio Calderon asked to be sent to home confinement in New York. The BOP said no. If they had sent him to a halfway house in Louisiana at that point, he would be out of luck. He couldn't come to court and say, I would like that decision to be reviewed. But the fact that they disregarded the Congressional Command in the First Step Act, that is reviewable. But not every — I mean, I guess where I'm — I would quibble with that is not everything that's a command is reviewable by a court. In the immigration context, we have a ton of stuff that is a command, but it's not reviewable by any court. And so I just wonder whether this was a legislative order to the executive branch saying you shall transfer him, but it's not one that can be remedied by any court, recognizing that the Bureau of Prisons has a lot of discretion. And they can try. They shall do it. But if there's no place to put them, then, you know, maybe that's not remediable in court. I have a couple of responses to that, Your Honor. First is that 3624G11 in the First Step Act tells the BOP to have capacity for everyone I must transfer. So they're ordering the BOP to have space for these people. So I'll just say that, number one. Number two, I think it's worth remembering that I like to — I'll compare it to the Second Chance Act. These are both funnels to send people to pre-release custody. The First Step Act is all done — the following is done by statute, by Congress. So they've made a number of convictions that make you ineligible, like 50 or 60, that cuts down the population going, like, by half. Then you have to have either a minimum or low pattern score. That, again, cuts it down. And so you get down to the bottom of this funnel, and those are the people who must be transferred. If you compare that to the Second Chance Act, which is much different, all of the funneling there is done by the discretion of the BOP. There's no ineligibilities. They're just deciding who descends by the extent practicable. And the Second Chance Act in it specifically says nothing about this limits the discretion of 3621B. That language is not in the First Step Act. 3621B in the same way. And so that bar in the Second Chance Act, and the lack of that bar in the First Step Act, must be given effect. Counsel, is this a conditions of confinement claim? It is not, Your Honor. And the reason I say that is because I understand — But our case is treated, this type of transfer, as a conditions. I understand — Rather than a custody case. I'm sorry, Your Honor. I understand you're probably talking about Kruger and Stenser. I think the through-line with those cases and the additional Ace Circuit cases, with the backdrop of Supreme Court cases, is in Kruger, it's a pro curio opinion. They're quickly dispensing of someone who didn't want their blood drawn in prison. That makes sense that that's strictly a conditions issue in prison where someone's arguing they can't do something to me. But then the Ace Circuit does adjudicate cases that are sending someone to pre-release custody in Fultz, in Elwood, in Miller. And I know that subject matter of jurisdiction did not come up there, but it could have been raised through Resplante, and there was a judge in common, the panels between Fultz and Elwood and Kruger, so someone was aware of it. But then you get to Stenser, and I think Stenser is key here because in Stenser, when discussing Kruger, the Court says because Stenser is not seeking release from prison, there is no habeas jurisdiction. That's the language. It's because he was bringing a case about constraint in prison that there was not habeas jurisdiction. And that makes sense given the backdrop of the Supreme Court. If you look at Prizer, the Supreme Court says that release from confinement in prison, even if you remain in custody, is within habeas jurisdiction. And as you saw last night, the BOP or the DOJ has actually  What case was that? Prizer, Your Honor, is the case of the Supreme Court that states that habeas is about release from confinement in prison. In that case, they discuss, and the subsequent case is also Morrissey and Harper. You will remain in custody, for instance, on parole, but you still have a habeas right to be released from prison. If I may, Your Honor, just to talk a little bit more about the 3621B issue. The reason I say that, that the discretionary decision that you brought up, Judge Ross, I think that there's additional hints in the First Step Act that the discretion should not expand further. So, for instance, in 3624G, the requirements that you're looking at, whether to transfer someone or not, there are discretionary decisions for the BOP to make. The warden can decide not to send a medium or high prisoner, which that implies that minimum or low prisoners shall go, they shall be transferred. The BOP has the authority to change the standard conditions someone has in a halfway house or home confinement. That's also in 3624G. Is this really, you know, I'm going to get at this. Is this really a discretionary decision, though? You know, my understanding is in Puerto Rico, they just couldn't find a place. There's no place. Do we have anything in the record that suggests, well, I'd be fine with a halfway house in Louisiana, or I'd be fine with home confinement in Florida, or whatever the case may be? Do we have any evidence of that, or was this really a binary choice for the BOP? Well, I guess I'll answer with what I know, Your Honor, about that. So, my client suggested multiple locations because his priority is understandably getting out of prison and being put in the community instead. My understanding is just what I've put in the record, which is that the BOP sent emails to Puerto Rico, you know, two or three times to ask if there was space. They said no. And, you know, my understanding is that the plan is to transfer him sometime soon before his date on July 3rd, though I still have not heard anything more about them than what I put in the briefing. Okay. And so, from my view, 3632, or 3632D4C and 3624G are clear that the BOP must find space for this person. They're being told to transfer them, and they must have capacity. So the BOP can't get their hands in saying we don't have a space for him. It doesn't apply to what Congress told them. So the point is, is they should have transferred him to California or Washington or wherever, where there was a halfway house that didn't involve being in prison, in your view. Correct, Your Honor. And that, I think that makes sense, given that the system in general is meant to be an incentive system. So you're rewarding these people for bettering themselves in prison by leaving them, you know, putting them out of prison earlier. The incentive fails if you're not actually leaving them, you know, bringing them to the community sooner. And as the amicus brief from the Minnesota law shows, that was important to the legislators who passed it, and it actually has the amicus  And to the President who signed it. And the President who signed it. I noticed they left the President out, and he's in Article I for this purpose. Correct. Article I, Section 7, makes the President part of the law. It's called the legislative branch. Proceed. Yes, Your Honor. And so, for the incentive system to be able to be undermined by the BOP when Congress made a specific demand would be inappropriate. If there's no further questions, I'll save my time. Yes, I do have one. We have note from our clerk in our materials that the BOP has an expected release date of July 3rd. Does that play, and how does that work if we're unable to complete this case by the 3rd of July? Will it be moot? Well, Your Honor, I suspect the BOP would say yes. I would want the opportunity to think about and potentially provide a response. My quick response would be no, because then you would still have almost two years of credits that have gone to no use, and I think there are opportunities to potentially still use those things if the Court were to say he was owed these credits and they were never paid out. But I would be happy to answer that if the issue does become. And 28J is available to you, too, counsel. Yes, that's right, Your Honor. Proceed. Thank you, Judge. Thank you. Mr. Drazee. Good morning. May it please the Court. Halfway houses and home confinement are places of imprisonment and are therefore subject to Congress's jurisdictional bar in 3621B. 3621B was passed as part of the First Step Act itself. Your Honor. I heard my friend talk about trying to distinguish 3621B placement decisions from First Step Act placement decisions, and this is all the same legislation. Well, it says under this subsection. You know the issue here. Correct. It says under this subsection. I didn't mean to say under this section. It says under this subsection. Correct. Go ahead. And this Court has said on at least three occasions that pre-release custody placements are 3621B discretionary placements within BOP's discretion. But they didn't have the First Step Act in those cases, right? Correct. But we had pre-release custody. Okay. And we had pre-release custody dating back to the Sentencing Reform Act and the Second Chance Act. And then in the First Step Act itself, Congress amends 3624 in addition to all the other sections that the First Step Act amends. And it places — it uses that same phrase, pre-release custody. So it's — Congress is borrowing the same phrase that it used in the Sentencing Reform Act, in the Second Chance Act. It's using the same statutory section that addresses those pre-release custody placements. And all of this context shows that pre-release custody placements under 3624, whether the authority derives from the Second — the Sentencing Reform Act, the Second Chance Act, or the First Step Act, those pre-release custody placements are place-of-imprisonment decisions. And they are all subject to 3621B. And this case, better than most, shows exactly why Congress stripped the courts of jurisdiction to make these decisions. Mr. Osorio Calderon is a sex offender, and he's asked a Minnesota judge to order that he be placed in a — in a halfway house near preschools and daycares in San Juan, Puerto Rico. Congress understood very well in the First Step Act, in the Second Chance Act, in the Sentencing Reform Act, that these decisions have to be made at a — at a place of availability, in light of local concerns, in light of a prisoner's community of release. And that's especially important here, given Mr. Osorio Calderon's status as a sex offender. But — but opposing counsel says, okay, send me to Louisiana or California or Washington, just give me some sort of halfway house where I'm not a — remain a prisoner in prison. The — the rehabilitative purpose of pre-release custody in the community is to place someone in the community where they're going to be released. It's so that a person can, within BOP custody, begin to find work, begin to make community connections, begin to set down roots in the place where they're — where they're going to be released, and all of a sudden be at liberty in the community. It does not accomplish BOP's correctional goals to — to put Mr. Osorio Calderon in rural Washington State and then have him shipped off to Puerto Rico. He — once he gets to Puerto Rico and is at liberty, he won't have made connections with potential employers. He won't have made connections with — with services in the community, like AA or NA or — or anything that he might need there. And — and that's why, in the First Step Act, again, I want the Court to look at Section 601 of the First Step Act. This is — this is the portion of the legislation itself that amends Section 3621B. This has two paragraphs. The — the jurisdiction-stripping paragraph is paragraph 2, but paragraph 1 talks about it amends other language in 3621B saying that BOP shall designate a prisoner's place of imprisonment. And here, Congress adds all of these considerations that BOP shall make. And most of them are about placing a prisoner near his — near his home, within 500 mile — within 500 driving miles of his home, closer if — if able, considering his medical — his mental and medical health needs, any requests that he makes as far as his faith-based needs, recommendations of a sentence in court, other security concerns. These are the types of things that BOP shall consider when making these placement decisions. And then, simultaneously, Congress says no court gets to review that. So as — as Judge Strass mentioned earlier, this is a directive from Congress to BOP. Here's what you consider when making these. These are the considerations that — that we, Congress, think are important. And by the way, you get to make that decision, and no judge gets to say otherwise. What if — what if you have a — here you have a situation where you have a halfway house that couldn't take him. Suppose your rural Washington example made me think of this. But suppose that he was from rural Washington, like out in the middle of nowhere, and there is no halfway house. Do those — for those people, do they just not get to use their — their credits that they've attained? BOP tries to get as close as they can in all cases. This — this case is — is a little unique, given the fact that Mr. Osorio Calderón is a sex offender. Not all Federal prisoners are sex offenders, of course. Halfway houses are — are — are difficult. They face a lot of community opposition, and that's especially true with halfway houses that are capable of meeting the needs of sex offenders. It's — these — these halfway houses do not grow on trees. You know, communities all across America do not, you know, raise their hands and say, please, please, please, BOP, put a halfway house that — that houses sex offenders in my neighborhood. It's — it's a difficult and — and really fraught process that BOP has to go through. And Congress has instructed them, you know, get your bed availability up. Get — get these places available. Meanwhile, Congress has said, this is not an issue for courts to decide. This is — this is the kind of issue that — that requires a lot of money. It requires a lot of planning by BOP. It requires a lot of — a lot of work with contractors to get these facilities up. It requires a lot of work with local communities to get — to get support and — and to — to work through all the red tape that's required to — to meet the needs of local communities. If all this is true, why not add the — add the words — you can even say shall, comma, to the extent practical or practical or something like that. You can say something that provides a little more discretion, but here we have shall. And shall means shall, and it's mandatory. So maybe courts don't get to do it, but shall means you have to do it. Sure. So I — I got two points on that. First is, you know, that — that doesn't — that in and of itself, the — the shall directive, mandatory, non-mandatory, whatever, does not independently provide jurisdiction to a court to review. It can be — it absolutely can be mandatory, but that doesn't mean there's — that judicial review is available. And my second point is, yes, Congress said in the Second Chance Act in 2007, shall to the extent practicable. But when it wrote the First Step Act, Congress didn't need to do that, because in Section 601, it said no court shall consider this. It didn't need to signal that practicability consideration in order to get courts to say, whoa, whoa, this is actually discretionary. Because instead, Congress just went ahead and said it directly. Courts don't get to look at this. And so I don't think that Congress needed to say shall to the extent practical because it — it didn't need to indicate that there's a level of discretion here, because it said so explicitly. And, you know, on this notwithstanding clause, I want to hum a few bars on what exactly that means. My friend said that the best reading is that, you know, this doesn't apply. There's no better reading of a statute divesting jurisdiction than notwithstanding any other provision of law. The Supreme Court has said a clearer statement could — there is no statement that could be clearer. This is as clear as Congress could get. Congress did not need to say shall to the extent practical because it said notwithstanding any other law, no court shall review this. With my — with my last minute, I want to touch on the conditions of confinement. The Court may have seen my late-breaking 28J yesterday addressing a filing that the Solicitor General had made. We're no longer advancing that argument that's in Part 2 of our brief. We do still, of course, ask the Court to find — to affirm the lower court based on Part 1, on the notwithstanding clause. And, of course, our Part 2 argument is still jurisdictional. The Court can go its own way on that. Although it is hard to unring the bell, right? You've argued it. Our case law says it. And so, ultimately, I think you would concede that we still have the — we still have the option as a court to consider our prior precedent. It puts you in an odd spot, I understand. Yes, Your Honor. I know that the Court understands well what it's like to answer to folks in Washington, D.C. So I cannot ask the Court to unring the bell. The Court will do what it's going to do on that jurisdictional question. Thank you. Thank you, Mr. Drazy. Mr. Parks. Your Honor, a couple of brief points, if I may. First, much has been made about Mr. Rosario Calderon being a sex offender. Of course, it makes him harder to place. But in the first setback, Congress made some sex offenders ineligible for time credits and was not — did not include him. He is eligible, so Congress has made that decision to some extent. Also, the point about the language being added in the First Step Act, I think that the reason it was added is because Congress knew there had got to be a lot more transfers happening. The First Step Act added the requirement that you be within 500 miles, just the extent you can be, and there's going to be all these people in the First Step Act being funneled to pre-release custody. So it makes sense you don't want to go to court and have people arguing, they didn't send me to home confinement, they sent me to an RRC, and said I'm not happy. They didn't want to hear that. If you're in pre-release custody, they wanted you to be happy about that. You earned your incentive. Finally, just briefly, the point that Mr. Osorio-Cotterone's reading under Cuts 3621B, this is not asking the Court to second-guess a placement decision. If he had been sent to a halfway house in rural Washington, he would have to live with that. It's not asking the Court to instead substitute your own thoughts of which halfway house he should go to. And being in a halfway house in general, even if not in your community, it still gets use living with liberty, with freedom, coming to your own conclusions, getting your own schedule, farther from the prison, and that has a rehabilitative effect on its own. Thank you, Your Honor. Thank you, Mr. Parks. The Court appreciates both counsel's arguments to us this morning and will continue to study the matter. Thank you.